Shawn A. McMillan, Esq. – SBN: 208529
attyshawn@netscape.net
Stephen D. Daner, Esq. – SBN: 259689
steve.mcmillanlaw@gmail.com
Evan D. Pullman, Esq. – SBN: 342431
evan.pullman.mcmillanlaw@gmail.com
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Telephone: (858) 646-0069
Facsimile: (858) 746-5283

Attorneys for Plaintiffs David Villasanti

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VILLASANTI, an individual; <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF RIVERSIDE, a public entity; JACQUELINE FARRIS, an individual; JOSEPH WEISENBERGER, an individual; MARIAH LOPEZ, an individual; JESUS CUEVAS, an individual; CHRISTINA PLEMONS, an individual; LEONOR MENDEZ, an individual; MARCIA BUTCHER, an individual; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br><br> Claim 1:  42 U.S.C. §1983 (Deception in the Presentation of Evidence) <br> Count 1: Fourth and Fourteenth Amendment Violations <br> Count 2: First Amendment Violations <br><br> Claim 2:  *Monell*-Related Claim (Deception in the Presentation of Evidence) <br><br> **JURY TRIAL DEMANDED** |

/ / /

/ / /

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions and/or omissions under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured under the United States Constitution, including the Fourth and Fourteenth Amendments, and under federal and state law.

2. Jurisdiction is conferred by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3. The acts and omissions complained of herein occurred in the County of Riverside, and it is believed that all living parties currently reside in the County of Riverside. Venue is proper in the District Court for the Central District of California.

4. Plaintiffs make the following allegations and claims upon personal belief, investigation of their counsel, and on information and belief.

**The Parties**

5. At all times relevant to this Complaint, Plaintiff David Villasanti, was a resident of Riverside County, California.

6. Defendant County of Riverside ("County") is a public entity of which the Department of Public Social Services Children's Services Division ("DPSS") is a subdivision.

7. DPSS Social Worker Jacqueline Farris ("Ms. Farris") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

8. Jospeh Weisenberger ("Mr. Weisenberger" or "Weisenberger") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

9.     Mariah Lopez ("Ms. Lopez" or "Lopez") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

10.    DPSS Social Worker Jesus Cuevas ("Mr. Cuevas" or "Cuevas") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

11.    DPSS Supervising Social Worker Christina Plemons ("Ms. Plemons" or "Plemons") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

12.    DPSS Social Worker Leonor Mendez ("Mr. Mendez " or "Mendez") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

13.    DPSS Supervising Social Worker Marcia Butcher ("Ms. Butcher" or "Butcher") was an individual residing in the County of Riverside, and an officer, agent, and/or employee of the County of Riverside and DPSS.

14.    Hereinafter, when referred to collectively, the Defendants in paragraphs 7 through 13, inclusive, may occasionally be referred to as the SOCIAL WORKER DEFENDANTS.

15.    Plaintiffs are ignorant of the true names and capacities of those County of Riverside Defendants sued herein as County Defendant DOES 1 through 20, and for that reason has sued such County of Riverside Defendants under such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to identify the County Defendant DOES when their identities have been ascertained. Each of the fictitiously named County of Riverside DOE Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiffs in that their conduct caused the damages and injuries set forth herein.

16.    Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants, or their officers,

agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants (or any of them) and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

17. Defendants were the knowing agents and/or alter egos of one another. Defendants directed, ratified, and/or approved each other's conduct and that of each other's agents or employees. Defendants agreed upon, approved or ratified each other's conduct, or otherwise conspired together to commit all of the acts and/or omissions alleged herein.

## COMMON ALLEGATIONS

18. At all relevant times, Caroline Villasanti, Manuel Villasanti, Andres Villasanti, David Villasanti, and S.V. constituted a family unit, entitled to Constitutional protections arising under the First, Fourth, and Fourteenth Amendments. This includes, but is not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, right to be free from government deception in the presentation of evidence to the courts, and the right of parents to reasonably direct the upbringing, care, and control of their children without unwarranted governmental interference. These rights also included medical care and the making of important medical decisions for their children.

19. At all relevant times it was well known that Caroline's primary language is Spanish, and that she requires a Spanish-English Translator during court and legal proceedings.

20. In addition, at all relevant times, Caroline Villasanti and all of her children – including Manuel, Andres, and David – enjoyed a separate and distinct right to live together without undue governmental interference.

21. Caroline Villasanti is the biological mother of Manuel, Andres, David, and S.V.

22. Anthony Luther is S.V.'s biological father. Caroline and Mr. Luther were involved

---

in a Family Law proceeding to resolve a custody dispute of S.V.

– ***Manuel, Andres, David, and S.V. Enjoy a Close and Intimate Relationship and/or Association***

23. At all relevant times, Manuel, Andres, David, and S.V. were minor cohabitating siblings. They grew up together, and were extremely close. They were tightknit and bonded in love and friendship. Manuel, Andres, David, and S.V. provided each other with emotional enrichment and support. Manuel, Andres, David, and S.V. confided in each other, and looked to each other for success and support both in times of joy and in times of distress.

24. Manuel, Andres, David, and S.V. attended after-school activities together. They explored a shared interest in the arts. Manuel was in the school band, and Andres, David, and S.V. would attend his shows. Manuel, Andres, and David would help S.V. with his school studies and activities.

25. Manuel, Andres, David, and S.V. shared similar religious thoughts, ideals, and beliefs. They jointly engaged in religious expression, discussion, and beliefs. They regularly and consistently attended bible study together.

26. Manuel, Andres, and David frequently and on a regular basis assisted and helped S.V. with his school assignments and/or homework.

27. Manuel, Andres, David were jointly involved in S.V.'s upbringing. They helped care for and supervise S.V. They would all prepare meals together.

28. For many years, S.V.'s relationship with Anthony Luther was nearly non-existent. As a result, Manuel, Andres, and David each took on fatherly roles to S.V.

– ***Caroline Attends Individual and Family Therapy***

29. In July through October 2019, Caroline attended and received individual therapy. In addition, Caroline, Manuel, Andres, David, and S.V. attended family therapy together.

/ / /

–  ***A Family Law Child Custody Evaluator Refuses to Provide Caroline a Spanish Translator During Her Evaluation***

30.  During underlying Family Law proceedings, Dr. James (Jim) Husen, Psy.D. performed a Cal. Evidence Code, §730 Child Custody Evaluation. Mr. Luther vetted, hired, paid for, and arranged for Dr. Husen's 730 Evaluation. Mr. Luther and Marie Moreno Myers, Esq., Mr. Luther's attorney, promised Caroline that a Spanish-English interpreter would be provided for the evaluation, and represented that Dr. Hussen spoke fluent Spanish. This was a lie.

31.  At the time of the evaluation, Caroline immediately, specifically, and directly requested that Dr. Husen provide a Spanish Interpreter during her evaluation. But, Dr. Hussen refused, and said something along the lines of "You are in America, you need to speak English."

32.  Without an interpreter, Dr. Hussen extensively questioned Caroline – in English. This included complex and extremely sexual and personal questions.

33.  During the interview, Caroline expressed an inability to understand the questions and difficulty in responding to the questions, because the questions and answers were in English. Caroline also told Dr. Hussen that she was suffering mental fatigue. Dr. Hussen ignored Ms. Villasanti's objections and complaints. Caroline again requested an Spanish Interpreter. Dr. Hussen again refused.

–  ***The Family Court Does Not Accept  the 730 Evaluation or Dr. Hussen's Opinions on September 27, 2019***

34.  On or about August 29, 2019, Mr. Luther and his attorney filed Dr. Hussen's 730 Evaluation Report.

35.  On or about September 27, 2019, the Domestic Violence Restraining Order hearing – to protect Caroline and Santiago from Mr. Luther – was held in Family Court. By then, County Social Worker Farris had developed a relationship with Mr. Luther, and attended the family law hearing to support Mr. Luther. Ms. Farris attended this hearing on a personal basis, and not as a representative of the

1    County.

2    36.    At this hearing, Mr. Luther's Attorney asked the Court to consider Dr. Hussen's

3           expert testimony and opinions.

4    37.    Caroline objected to the 730 Evaluation Report, and indicated that there were

5           inaccuracies in his report, and challenged his process and opinions. The Family

6           Court refused to consider the Dr. Hussen's expert testimony, opinions, and

7           recommendations at the Domestic Violence Restraining Order hearing.

8    38.    The Family Law Court indicated that – at a future time – Caroline would have an

9           opportunity to cross-examine Dr. Hussen regarding his opinions and 730

10          Evaluation Report. The Family Law Court also indicated that a Cal. Evid. Code,

11          §733 Rebuttal Evaluation Report or another 730 Evaluation might be proper. Once

12          this was done, the Family Law Court indicated that a full evidentiary trial on the

13          730 Evaluation Report could be conducted.

14   39.    The Family Law Court began hearing testimony regarding the Domestic Violence

15          Restraining Order against Mr. Luther. However, the Domestic Violence

16          Restraining Order hearing was not finished, and there were still several witnesses

17          to call. As a result, the Family Law Court ordered all parties back on October 2

18          and 4, 2019, to complete the hearing and issue orders.

19          –    ***Ms. Farris Interviews Manuel, Andres, and David; They Explain That***

20               ***Caroline is Emotionally Supportive and Do Not Express Any Concerns***

21   40.    On September 30, 2019, Ms. Farris interviewed Manuel, Andres, and David

22   41.    Manuel (age 17), Andres (age 16), and David (age 14) told Ms. Farris the

23          following:

24          a.    Caroline was attending therapy.

25          b.    Caroline, Manuel, Andres, David, and S.V. were all attending family

26                therapy.

27          c.    Santiago was attending separate individual therapy.

28          d.    They had no concerns regarding Caroline's mental health.

COMPLAINT FOR DAMAGES

6

e.    They had no concerns regarding Caroline's ability to appropriately provide care.

f.    Caroline was emotionally stable.

g.    Caroline was not psychologically or emotionally abusive.

h.    They did not feel threatened or unsafe with Caroline.

i.    They were not being abused or neglected

–    ***On October 1, 2019, Ms. Farris Fraudulently Obtains A Court Order To Seize Manuel, Andres, David, and S.V.***

42.    On October 1, 2019, Ms. Farris sought a Protective Custody Warrant for Manuel, Andres, David, and S.V. In so doing, she filed a fraudulent Declaration in Support of Warrant Authorizing Protective Custody. Ms. Farris signed this Declaration "under penalty of perjury." At the time she filed her "Declaration in Support of Warrant" she knew the information contained in it was materially false.

43.    In addition to fabricating facts, Ms. Farris also knowingly included false statements and suppressed known exculpatory evidence.

44.    For example, Ms. Farris included and recited Dr. Hussen's 730 Evaluation report, opinions, and/or recommendations, in the Warrant Application even though she was personally aware of the fact that the Family Court did not entertain Dr. Husen's expert opinions or admit them into evidence, that Caroline was challenging/objecting to the report, that Dr. Hussen would be cross-examined regarding his opinions and 730 Evaluation Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730 Evaluation would be conducted.

45.    Nonetheless, Ms. Farris knowingly suppressed the fact that the Family Court did not entertain Dr. Hussen's 730 Evaluation report, opinions, and/or recommendations, that Caroline was challenging/objecting to the report, that Dr. Hussen would be cross-examined regarding his opinions and 730 Evaluation Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730 Evaluation would be conducted. Likewise, Ms. Farris knowingly suppressed the

1   fact that Caroline was not provided a translator.

2   46.   Ms. Farris further told the Juvenile Court that Manuel, Andres, and David,

3         "confirmed" that Caroline was not attending therapy. This was a blatant lie – and

4         Farris knew it. Manuel, Andres, David, and S.V. *all* told Ms. Farris that Caroline

5         was attending therapy.

6   47.   Ms. Farris also stated – under penalty of perjury – that Manuel, Andres, and David

7         were at risk of being abused by and could not be protected from Caroline. This

8         was a lie. Ms. Farris knew and determined that Manuel (age 17), Andres (age 16),

9         and David (age 14) – due to their ages – were not in any danger of abuse

10        whatsoever, and were able to protect themselves, if necessary. But, Ms. Farris

11        suppressed this from the Juvenile Court.

12  48.   Ms. Farris further suppressed the fact that Manuel, Andres, and David were not

13        being abused or neglected, and had no concerns regarding Caroline's ability to

14        appropriately provide care – facts that Ms. Farris was personally aware of at the

15        time she filed her statement.

16  49.   On information and belief, Ms. Plemons reviewed Ms. Farris's Protective Custody

17        Warrants and Declaration in Support of Warrant Authorizing Protective Custody,

18        and, after review, approved and authorized their filing.

19  50.   Based on Ms. Farris's deception in the presentation of evidence in the Warrant

20        Application, the Juvenile Court issued a warrant to seize Manuel, Andres, David,

21        and S.V. from Caroline's custody. But, for Ms. Farris's deception, the Juvenile

22        Court would not have issued the warrant.

23  51.   October 1, 2019, based on the fraudulently obtained warrants, Ms. Farris seized

24        Manuel, Andres, David, and S.V. and detained them from their home. Ms.

25        Plemons approved and/or authorized this removal.

26  / / /

27

28

– ***Mr. Weisenberger Signs and Files a Juvenile Dependency Petition – Under Penalty of Perjury; Mr. Weisenberger Makes False Statements and Suppresses Known Exculpatory Evidence***

52. On October 1, 2019, Mr. Weisenberger drafted, signed – under penalty of perjury, and filed a Juvenile Dependency Petition for Manuel, Andres, David, and S.V.

53. Mr. Weisenberger engaged in deception in the presentation of evidence in the Juvenile Dependency Petition. Mr. Weisenberger includes false statements and suppresses known exculpatory evidence.

54. For example, Mr. Weisenberger included and presented Dr. Hussen's 730 Evaluation report, opinions, and/or recommendations, in the Juvenile Dependency Petition. Mr. Weisenberger knew that the 730 evaluation was being challenged, that Dr. Hussen still had to be cross-examined regarding his opinions and 730 Evaluation Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730 Evaluation would be conducted. But, Mr. Weisenberger suppressed these facts. Likewise, Mr. Weisenberger knowingly suppressed the fact that Caroline was not provided a translator during the 730 evaluation process.

– ***Ms. Farris and Ms. Plemons Sign and File Their Detention Report Under Penalty of Perjury; Ms. Farris and Ms. Plemons Make False Statements and Suppress Known Exculpatory Evidence***

55. On October 3, 2019, Ms. Farris and Ms. Plemons drafted, signed – under penalty of perjury, and filed Manuel, Andres, David, and S.V.'s Detention Report.

56. Ms. Farris and Ms. Plemons engaged in deception in the presentation of evidence in the Detention Report. There, Ms. Farris and Ms. Plemons included false statements and suppressed known exculpatory evidence.

57. For example, both Ms. Farris and Ms. Plemons knew that the 730 evaluation was being challenged/objected to, that Dr. Hussen still had to be cross-examined regarding his opinions and 730 Evaluation Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730 Evaluation would need to be

1  conducted, and that Caroline was not provided a translator during the 730
2  evaluation process even though she required one.

3  58.  Yet, Ms. Farris and Ms. Plemons extensively recited Dr. Hussen's 730 Evaluation
4      report, opinions, and/or recommendations, in the Detention Report. Even though
5      they knew that the 730 evaluation was being challenged/objected to, that Dr.
6      Hussen still had to be cross-examined regarding his opinions and 730 Evaluation
7      Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730
8      Evaluation would need to be conducted.  Likewise, Ms. Farris and Ms. Plemons
9      knowingly suppressed the fact that Caroline was not provided a translator during
10     the 730 evaluation process even though she required one.

11 59.  Ms. Farris and Ms. Plemons further told the Juvenile Court that Manuel, Andres,
12     and David, "confirmed" that Caroline was not attending therapy. This was a lie.
13     Manuel, Andres, David, and S.V. told Ms. Farris that Caroline was attending
14     therapy.

15 60.  Based on Ms. Farris and Ms. Plemons' deception in the presentation of evidence
16     in the Detention Report, the Juvenile Court took jurisdiction of Manuel, Andres,
17     David, and S.V., and initiated Juvenile Proceedings. But for Ms. Farris and Ms.
18     Plemons' deception in the presentation of evidence, the Juvenile Court would not
19     have continued to detain the boys, but rather would have dismissed the case and
20     sent them home to their mother.

21     –  ***Mr. Lopez Signs and Files an Amended Juvenile Dependency Petition –***
22        ***Under Penalty of Perjury; Mr. Lopez Makes False Statements and***
23        ***Suppresses Known Exculpatory Evidence***

24 61.  On October 3, 2019, Ms. Lopez drafted, signed – under penalty of perjury, and
25     filed a Juvenile Dependency Petition for Manuel, Andres, David, and S.V.

26 62.  Ms. Lopez engaged in deception in the presentation of evidence in the Juvenile
27     Dependency Petition. Ms. Lopez includes false statements and suppresses known
28     exculpatory evidence.

63.  For example, Ms. Lopez included and presented Dr. Hussen's 730 Evaluation report, opinions, and/or recommendations, in the Juvenile Dependency Petition. But, Ms. Lopez suppressed the fact that the 730 evaluation was being challenged/objected to, that Dr. Hussen still had to be cross-examined regarding his opinions and 730 Evaluation Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730 Evaluation would be conducted. Likewise, Ms. Lopez knowingly suppressed the fact that Caroline was not provided a translator during the 730 evaluation process even though it was known that a translator was required.

*–   On October 4, 2019, at the Detention Hearing, the Juvenile Court Orders Manuel, Andres, and David to be Returned to Caroline's Custody*

64.  At the Detention Hearing, Manuel, Andres, and David each told their appointed attorney that they wanted to return to Caroline's custody immediately.

65.  At the Detention Hearing, Ms. Farris reiterated her decision that Manuel (age 17), Andres (age 16), and David (age 14) – due to their ages – were not in danger of abuse, and were able to protect themselves, if necessary. Ms. Farris agreed that Manuel, Andres, and David could be safely returned to Caroline's custody and care.

66.  The Juvenile Court found that Manuel, Andres, and David all came within Cal. Welf. & Inst. Code, §300(b), and the Juvenile Court's jurisdiction. Accordingly, the Juvenile Court held that Manuel, Andres, David, and S.V. were "detained, and temporary placement and care is vested with DPSS pending the hearing under W&C 355 or further order of the court." DPSS was authorized to and had the ability to control Manuel, Andres, David, and S.V.'s medical, mental, dental, surgical, and/or mental health care and/or testing. Caroline was ordered to make Manuel, Andres, and David available and accessible to DPSS for inspections and interviews. DPSS was granted access to Manuel, Andres, and David at their home, school, or any other location.

67.  The Juvenile Court ordered Manuel (age 17), Andres (age 16), and David (age 14) to be returned to Caroline's care. Despite being returned to Caroline care, Manuel, Andres, and David were still subject to the County's custody, control, management, and jurisdiction.

68.  After the Detention Hearing, Manuel asked Ms. Farris where S.V. was, and asked to see him. Andres and David also requested visitation with S.V. Ms. Farris brushed off the sibling visitation requests, and told them that we'll get to that later.

69.  Ms. Farris never allowed Manuel, Andres, or David to visit or speak with S.V.

    –  ***On October 23, 2019, Manuel, Andres, and David Tell Mr. Cuevas That Farris Lied to the Court***

70.  On October 23, 2019, Mr. Cuevas interviewed Manuel, Andres, and David

71.  During this interview, Manuel, Andres, and David reported, confirmed, and/or disclosed that they were all doing well, and feel safe and comfortable in Caroline's care and home, and they had no concerns regarding Caroline's parenting.

72.  Manuel, Andres, and David told Mr. Cuevas that Ms. Farris engaged in deception with the Juvenile Court in her Detention Report, by distorting and misrepresenting their prior interview statements. They further identified Ms. Farris and Ms. Plemons' lies, including that Manuel, Andres, and David said that Caroline was not attending therapy and that they were not attending family therapy.

73.  Manuel, Andres, and David set the record straight, and again confirmed that Caroline was attending individual and family therapy, and that they were all attending family therapy together.

74.  Manuel, Andres, and David iterated to Mr. Cuevas, that they all wanted to see and/or speak with S.V.

/ / /

– ***Mr. Cuevas and Ms. Plemons Sign and File a Jurisdiction/Disposition Report – Under Penalty of Perjury; Mr. Cuevas and Ms. Plemons Make False Statements and Suppress Known Exculpatory Evidence***

75. On November 12 & 13, 2019, Mr. Cuevas and Ms. Plemons drafted, signed – under penalty of perjury, and filed Manuel, Andres, David, and S.V.'s Jurisdiction/Disposition Report.

76. Mr. Cuevas and Ms. Plemons intentionally refrained from correcting Ms. Farris's prior lies in the Detention Report. Likewise, Mr. Cuevas and Ms. Plemons did not provide the previously suppressed exculpatory evidence.

77. Mr. Cuevas and Ms. Plemons engaged in deception in the presentation of evidence in the Jurisdiction/Disposition Report. Mr. Cuevas and Ms. Plemons intentionally included false statements and suppressed known exculpatory evidence.

78. For example, Mr. Cuevas and Ms. Plemons extensively recited Dr. Hussen's 730 Evaluation report, opinions, and/or recommendations, in the Detention Report. But, Mr. Cuevas and Ms. Plemons knowingly suppressed the fact that the 730 evaluation was being challenged/objected to, that Dr. Hussen still had to be cross-examined regarding his opinions and 730 Evaluation Report, that a Cal. Evid. Code, §733 Rebuttal Evaluation Report or another 730 Evaluation would be conducted. Likewise, Mr. Cuevas and Ms. Plemons knowingly suppressed the fact that Caroline was not provided a translator during the 730 evaluation process even though it was known that a translator was required.

79. Mr. Cuevas and Ms. Plemons further told the Juvenile Court that Manuel, Andres, and David, "confirmed" that Caroline was not attending therapy. This was a lie. Manuel, Andres, David, and S.V. told Ms. Farris that Caroline was attending therapy.

80. On December 12, 2019, at the Jurisdiction/Disposition Hearing, the Juvenile Court found that Manuel, Andres, and David all came within Cal. Welf. & Inst. Code, §300(b). Manuel, Andres, and David were adjudged to be dependents of the

Juvenile Court, and within its jurisdiction. Caroline, Manuel, Andres, and David were ordered to participate in Family Maintenance Services. Caroline was ordered to make Manuel, Andres, and David available and accessible to DPSS for access, inspect, and/or interview. DPSS was granted access to Manuel, Andres, and David at their home, school, or any other location. DPSS established – and the Juvenile Court approved – a Case Plan controlling and/or regarding Manuel, Andres, and David's education, medical, and mental health services. Likewise, DPSS established – and the Juvenile Court approved – a Case Plan to supervise the care Caroline was providing to Manuel, Andres, and David

81.  Mr. Cuevas and Ms. Plemons created and signed the Case Plan for Manuel, Andres, and David.

82.  DPSS, Mr. Cuevas, and Ms. Plemons maintained custody, supervision, control, and/or  management of Manuel, Andres, and David In October, November, and December 2019, Mr. Cuevas utilized the Court's order to access, interview, and/or inspect Manuel, Andres, and David at their school and home.

83.  Based on Mr. Cuevas and Ms. Plemons' deception in the presentation of evidence in the Detention Report, the Juvenile Court removed S.V. from Caroline's custody, but ordered reunification services.

– ***Mr. Cuevas and Ms. Plemons Refuse to Allow Manuel, Andres, and David to Contact and/or Visit S.V.***

84.  At the Jurisdiction/Disposition Hearing, the Juvenile Court ordered therapeutic visitation between Manuel, Andres, David, and S.V.

85.  Nonetheless, Mr. Cuevas and Ms. Plemons completely refused to allow Manuel, Andres, and David to speak with, contact, and/or visit S.V.

– ***Psychiatrist Harry David Goldwasser, MD Determines That Dr. Husen's 730 Evaluation is Invalid***

86.  DPSS referred Caroline to psychiatrist Harry David Goldwasser, MD, through Riverside University Health System – Behavioral Health, for a mental health

evaluation and assessment. In early January 2020, Dr. Goldwasser performed an initial mental health evaluation and assessment on Caroline. Dr. Goldwasser used a translator, and he could not have completed his evaluation without translation.

87. Dr. Goldwasser was shocked and dismayed that Dr. Husen refused to provide a Spanish translator, because this violated standard procedure for non-English speaking clients.

88. Dr. Goldwasser immediately determined that Dr. Husen's physiological testing was invalid, because it was not offered in her native language, i.e., Spanish. Dr. Goldwasser determined that Dr. Husen's 730 Evaluation Report and Diagnosis were invalid, and could not be relied upon.

– ***Dr. Goldwasser Directly Informs Ms. Farris and DPSS That Dr. Husen's 730 Evaluation and Diagnoses are Invalid, and Cannot be Relied Upon***

89. On January 8, 2020, Dr. Goldwasser spoke with Ms. Farris, and told her that the need for a Spanish Translator was crucial to an accurate evaluation and report, and was the required standard procedure for non-English speaking clients. He further explained that, without a translator, Dr. Husen's psychological testing, 730 Evaluation Report, and diagnosis were all invalid, and could not be relied upon.

90. Dr. Goldwasser told Ms. Farris that he had to use a Spanish translator – a required standard procedure for non-English speaking clients. And, that he could not have completed Caroline's evaluation and assessment without translation.

91. In early January 2020, Dr. Goldwasser memorialized his conversation and finding, and provided DPSS and Ms. Farris written confirmation that Dr. Husen's psychological testing, 730 Evaluation Report, and diagnosis were all invalid, and could not be relied upon.

92. Dr. Goldwasser told DPSS and Ms. Farris to immediately arrange for a reevaluation with a translator.

93. In response, Ms. Farris promised to – and did – forward this information to Mr. Cuevas, Caroline's new social worker. However, Ms. Farris undertook no action

whatsoever to correct or otherwise augment the false information she had previously provided to the Juvenile Court in her earlier reporting. Instead, she opted to suppress the information she obtained from Dr. Goldwasser.

– ***Defendants Mr. Cuevas, Ms. Plemons, Ms. Mendez, and Ms. Butcher Decide to Ignore and Suppress Dr. Goldwasser's Determinations and Findings, and, Instead, Promote Dr. Husen's False and Fraudulent 730 Evaluation Report and Diagnosis***

94. On or about January 14, 2020, Mr. Cuevas, Ms. Plemons, Ms. Mendez, and Ms. Butcher held a staffing meeting, where it was decided that going forward, Ms. Mendez and Ms. Butcher were to be Caroline, Manuel, Andres, and David's assigned case Social Worker and Supervisor, respectively.

95. When Ms. Mendez and Ms. Butcher took over, Manuel, Andres, and David remained dependents of the Juvenile Court, and within its jurisdiction. Caroline, Manuel, Andres, and David were still required and ordered to participate in Family Maintenance Services. Caroline was still required and ordered to make Manuel, Andres, and David available and accessible to DPSS for inspections and interviews. DPSS – including Ms. Mendez and Ms. Butcher – had court ordered access to Manuel, Andres, and David at their home, school, or any other location. Manuel, Andres, and David's remained under DPSS's – including Ms. Mendez and Ms. Butcher's – control regarding Manuel, Andres, and David's education, medical, and mental health services. DPSS – including Ms. Mendez and Ms. Butcher – maintained supervision of the care Caroline was providing to Manuel, Andres, and David

96. DPSS, Ms. Mendez, and Ms. Butcher maintained custody, supervision, control, and/or management of Manuel, Andres, and David In January, February, March, April, and May 2020, Ms. Mendez utilized the Court's order to access, interview, and inspect Manuel, Andres, and David at their home. In May 2020, Ms. Mendez accessed and inspected Manuel, Andres, and David at their home – in person. In

February 2020, DPSS, Cuevas, Mendez, and/or Butcher subjected Manuel,
Andres, and David to a mental health assessment, and – following the assessment
– therapy and/or counseling.

97.    In February 2020, DPSS, Cuevas, Mendez, and Butcher required Manuel, Andres,
and David to attend a Family and Child Team Meeting. Following this meeting,
DPSS, Cuevas, Mendez, and Butcher subjected Manuel, Andres, and David to a
Service Plan. DPSS, Cuevas, Mendez, and Butcher required Manuel, Andres, and
David to attend and/or continue to attend counseling and/or therapy services.

98.    During this meeting, Mr. Cuevas, Ms. Plemons, Ms. Mendez, and Ms. Butcher
discussed and agreed to:

a.    Continue to accept and promote to the Juvenile Court Dr. Hussen's false,
fraudulent, and invalid 730 Evaluation Report – including his diagnosis that
Caroline had severe Mental Health issues, even thought they were fully
aware that the underlying assessment, report and diagnosis were inaccurate.

b.    Ignore – and suppress from the Juvenile Court – Dr. Goldwasser's
determination that Dr. Husen's physiological testing, 730 evaluation, and
diagnosis were invalid.

c.    Reject Dr. Goldwasser advice and instruction to immediately reevaluate
Caroline with a Spanish translator– a required standard procedure for
non-English speaking clients.

–    ***Ms. Mendez Refuses to Consider – or Inform the Juvenile Court of – Dr.
Goldwasser's Determinations and Findings***

99.    On or around January 28, 2020, Caroline reiterated to Ms. Mendez that Dr.
Goldwasser determined that Dr. Hussen's 730 evaluation and diagnosis were
invalid, and that a reevaluation – with a Spanish translator – was necessary.

100.    Ms. Mendez refused to consider Dr. Goldwasser's determinations. Instead, Ms.
Mendez proclaimed that she was not an investigator, and, thus, would not consider
or review any new evidence or mental health assessments – and certainly would

1    not present them to the Juvenile Court in her reporting. She also refused to

2    consider, at all, Dr. Goldwasser's determinations, assessments, or diagnoses.

3  101.  Instead, Ms. Mendez told Caroline that she was bound by the Juvenile Court's

4    Minute Order and Case Plan filed in December 2019, and, that Caroline was stuck

5    with Dr. Hussen's 730 evaluation and diagnosis regardless of whether or not they

6    were false.

7  102.  Ms. Mendez refused to present any of the controverting evidence, diagnoses, or

8    mental health assessments to the Juvenile Court. Ms. Mendez refused to even

9    inform the Juvenile Court of Dr. Goldwasser's determinations and extreme

10    concerns – even though Dr. Goldwasser was the medical provider Carolina was

11    sent to by DPSS.

12  103.  As a result, Manuel, Andres, and David remained dependents of the Juvenile

13    Court, and DPSS, Ms. Mendez, and Ms. Butcher maintained custody, supervision,

14    control, and/or  management of Manuel, Andres, and David

15    –  ***By Early February 2020, Dr. Goldwasser Found Caroline had No***

16    ***Symptoms of Mental Illness and No Symptoms of Factitious Disorder***

17  104.  By early February 2020, Dr. Goldwasser diagnosed Caroline as only showing

18    symptoms of adjustment disorder – i.e., an emotional or behavioral reaction to a

19    stressful event or change in a person's life. Dr. Goldwasser determined that

20    Caroline showed no symptoms of mental illness.

21  105.  Dr. Goldwasser found no signs or symptoms to support a factitious disorder (i.e.,

22    Munchausen by Proxy) diagnosis. Further, Dr. Goldwasser expressly disagreed

23    with Dr. Hussen's factitious disorder diagnosis.

24  106.  Dr. Goldwasser found it troubling and disturbing that CPS was denying Caroline,

25    Manuel, Andres, and David contact with S.V., because no primary psychiatrist had

26    diagnosed Caroline with any mental illness.

27  / / /

28

---

COMPLAINT FOR DAMAGES

18

– ***Dr. Goldwasser Emails His Determinations, Diagnoses, and Assessments to DPSS and Ms. Mendez***

107. On or about February 6, 2020, Dr. Goldwasser provided his determinations, diagnoses, concerns, and assessments to Ms. Mendez in writing.

108. Dr. Goldwasser explained that:

   a.   Caroline showed no signs or symptoms to support a factitious disorder (i.e., Munchausen by Proxy) diagnosis

   b.   Caroline did not have factitious disorder (i.e., Munchausen by Proxy)

   c.   Caroline only showed symptoms of an adjustment disorder – i.e., an emotional or behavioral reaction to a stressful event or change in a person's life.

   d.   Caroline showed no symptoms of mental illness.

   – ***In February 2020, Ms. Mendez and Ms. Butcher Again Refuse to Consider and Suppress From the Juvenile Court – Dr. Goldwasser's Determinations, Diagnoses, and Assessments***

109. In early February 2020, Caroline reiterated to Ms. Mendez and Ms. Butcher that Dr. Goldwasser recently found and determined that:

   a.   Caroline only showed symptoms of an adjustment disorder.

   b.   Caroline she showed no symptoms of mental illness.

   c.   Caroline showed no signs or symptoms to support a facticious disorder (i.e., Munchausen by Proxy) diagnosis.

110. Caroline also provided Ms. Mendez and Ms. Butcher with another copy of Dr. Goldwasser's letter confirming that Dr. Husen's psychological testing, 730 Evaluation Report, and diagnosis were all invalid, and could not be relied upon.

111. Ms. Mendez and Ms. Butcher again refused to consider Dr. Goldwasser's determinations and diagnoses. Instead, Ms. Mendez and Ms. Butcher proclaimed that they were not investigators, and, thus, would not consider or review any evidence or mental health assessments; and, that they would not consider Dr.

Goldwasser's determinations, assessments, or diagnoses. They also continued to suppress the information from their reports to the juvenile court, even though they knew definitively that it would have changed the course of the case.

112. Instead, Ms. Mendez and Ms. Butcher told Caroline that she was bound by the Juvenile Court's Minute Order and Case Plan filed in December 2019, and, that Caroline was stuck with Dr. Hussen's 730 evaluation and diagnosis even though it was defective and false.

113. Ms. Mendez and Ms. Butcher still refused to present evidence, diagnoses, or mental health assessments to the Juvenile Court. Ms. Mendez and Ms. Butcher refused to even inform the Juvenile Court of Dr. Goldwasser's determinations and extreme concerns.

114. As a result, Manuel, Andres, and David remained dependents of the Juvenile Court, and DPSS, Ms. Mendez, and Ms. Butcher maintained custody, supervision, control, and/or management of Manuel, Andres, and David

   – *In March 2020, Ms. Mendez and Ms. Butcher Again Refuse to Consider – And To Suppress from the Juvenile Court – Dr. Goldwasser's Determinations, Diagnoses, and Assessments*

115. In March 2020, Caroline again reiterated to Ms. Mendez and Ms. Butcher that Dr. Goldwasser, DPSS's own referred doctor, found and determined that:

   a.    Caroline only showed symptoms of adjustment disorder.

   b.    Caroline she showed no symptoms of mental illness.

   c.    Caroline showed no signs or symptoms to support a facticious disorder (i.e., Munchausen by Proxy) diagnosis.

116. Caroline presented Dr. Goldwasser's recent diagnosis that Caroline only showed symptoms of adjustment disorder – i.e., an emotional or behavioral reaction to a stressful event or change in a person's life. That Dr. Goldwasser determined that Caroline showed no other symptoms of mental illness. And, that Dr. Goldwasser found no signs or symptoms to support a facticious disorder (i.e., Munchausen by

1    Proxy) diagnosis.

2    117.    On information and belief, Ms. Mendez spoke with Dr. Goldwasser and confirmed

3    his diagnosis and determinations, including the fact that he was highly critical of

4    the earlier 730 evaluation, that the 730 Evaluation Report was invalid, that Dr.

5    Husen's diagnosis were not supported, and the fact that no translator had been

6    provided during the 730 evaluation process.

7    118.    Ms. Mendez and Ms. Butcher again refused to consider Dr. Goldwasser's

8    determinations and diagnoses. Instead, Ms. Mendez and Ms. Butcher reiterated

9    that they were not investigators, and, was bound by the Juvenile Court's Minute

10   Order and Case Plan filed in December 2019.

11   119.    Ms. Mendez and Ms. Butcher refused to present Dr. Goldwasser's determinations

12   and diagnoses regarding Caroline's current mental health. Ms. Mendez and Ms.

13   Butcher still refused to present Caroline's updated evidence, diagnoses, or mental

14   health assessments to the Juvenile Court. Likewise, Ms. Mendez and Ms. Butcher

15   refused to tell the Juvenile Court that Dr. Goldwasser directly disputed Dr.

16   Hussen's 730 evaluation.

17   120.    Ms. Mendez still refused to present and in fact actively suppressed evidence,

18   diagnoses, or mental health assessments from the Juvenile Court. Ms. Mendez

19   refused to even inform the Juvenile Court of Dr. Goldwasser's determinations and

20   extreme concerns.

21   121.    As a result, Manuel, Andres, and David remained dependents of the Juvenile

22   Court, and DPSS, Ms. Mendez, and Ms. Butcher maintained custody, supervision,

23   control, and/or  management of Manuel, Andres, and David

24   122.    Ms. Mendez and Ms. Butcher further refused to offer and/or provide with the court

25   ordered reunification services, and refused to allow Plaintiff any contact with S.V.

26   / / /

27

28

1     **–**     ***In April 2020, Mr. Cuevas and Ms. Plemons Sign and File an Ex Parte***

2         ***Application – Under Penalty of Perjury; Mr. Cuevas and Ms. Plemons***

3         ***Make False Statements and Suppress Known Exculpatory Evidence***

4   123.   On April 13, 2020, Mr. Cuevas and Ms. Plemons signed – under penalty of perjury

5         – an Ex Parte Application. Mr. Cuevas and Ms. Plemons filed this Ex Parte

6         Application with the Juvenile Court.

7   124.   Mr. Cuevas and Ms. Plemons engaged in deception in the presentation of evidence

8         to the Juvenile Court

9   125.   In this *Ex Parte* Application, Mr. Cuevas and Ms. Plemons reinvigorated Dr.

10        Hussen's 730 evaluation diagnosis and recommendations. Mr. Cuevas and Ms.

11        Plemons told the Juvenile Court that:

12        a.     Caroline was diagnosed with severe and recurring major depression,

13             Post-Traumatic Stress Disorder, Generalized Anxiety, and Factitious

14             Disorder Imposed on Another, i.e. Munchausen by proxy.

15        b.     Per Dr, Husen's recommendation in the 730 Evaluation, Caroline should be

16             ordered to participate in Intensive Therapeutic Services for one (1) year – at

17             a minimum.

18   126.   Mr. Cuevas and Ms. Plemons deliberately suppressed exculpatory evidence, and

19        did not tell the Juvenile Court that:

20        a.     Dr. Goldwasser – a County psychiatrist – determined that Dr. Husen's

21             physiological testing was invalid, because it was not offered in her native

22             language, i.e., Spanish.

23        b.     Dr. Goldwasser diagnosed Caroline as only showing symptoms of

24             adjustment disorder, and determined that Caroline showed no symptoms of

25             mental illness.

26        c.     Dr. Goldwasser found no signs or symptoms to support a facticious disorder

27             diagnosis.

28        d.     Mr. Luther paid for Dr. Hussen's report, and no primary psychiatrist had

1    diagnosed Caroline with mental illness.

2    —    ***Ms. Mendez and Ms. Butcher Refuse to Allow Manuel, Andres, and David***

3    ***to Contact and/or Visit S.V.***

4    127.    At the Jurisdiction/Disposition Hearing, the Juvenile Court ordered therapeutic

5    visitation between Manuel, Andres, David, and S.V. But, Ms. Mendez and Ms.

6    Butcher completely refused to allow Manuel, Andres, and David to speak with,

7    contact, and/or visit S.V.

8    —    ***In April 2020, Ms. Mendez and Ms. Butcher Sign and File a Status***

9    ***Review Report – Under Penalty of Perjury; Ms. Mendez and Ms. Butcher***

10    ***Make False Statements and Suppress Known Exculpatory Evidence***

11    128.    On May 21, 2020, Ms. Mendez and Ms. Butcher signed – under penalty of perjury

12    – a Status Review Report. Ms. Mendez and Ms. Butcher filed this report with the

13    Juvenile Court.

14    129.    Ms. Mendez and Ms. Butcher engaged in deception in the presentation of evidence

15    to the Juvenile Court

16    130.    For example, Ms. Mendez and Ms. Butcher reinvigorated Dr. Hussen's 730

17    evaluation diagnosis and recommendations. Ms. Mendez and Ms. Butcher told the

18    Juvenile Court that Caroline had been diagnosed with severe, unresolved

19    behavioral health issues, including Generalized Anxiety, Major Depression,

20    Post-Traumatic Stress Disorder, and Factitious Disorder Imposed on Another: i.e.

21    Munchausen by proxy.

22    131.    Ms. Mendez and Ms. Butcher deliberately suppressed exculpatory evidence, and

23    did not tell the Juvenile Court that:

24    a.    Dr. Goldwasser – a County psychiatrist – determined that Dr. Husen's

25    physiological testing was invalid, because it was not offered in her native

26    language, i.e., Spanish.

27    b.    Dr. Goldwasser diagnosed Caroline as only showing symptoms of

28    adjustment disorder, and determined that Caroline showed no other

COMPLAINT FOR DAMAGES

23

1    symptoms of mental illness.

2        c.    Dr. Goldwasser found no signs or symptoms to support a facticious disorder

3            diagnosis.

4    132.  Based on Ms. Mendez and Ms. Butcher's deception in the presentation of

5          evidence, the Juvenile Court terminated Caroline's custody of S.V.

6    133.  Based on Ms. Mendez and Ms. Butcher's deception in the presentation of

7          evidence, the Juvenile Court denied Manuel, Andres, and David to see, speak

8          with, or visit S.V.

9    **FIRST CLAIM FOR RELIEF – §1983**

10    **(Deception in The Presentation of Evidence to the Juvenile Court**)

11    (By Plaintiff Against Defendants Jacqueline Farris, Jospeh Weisenberger, Mariah Lopez,

12    Jesus Cuevas, Christina Plemons, Leonor Mendez, Marcia Butcher, and DOES 1 through

13    20, inclusive.)

14    **Count 1:**

15    **(Fourth and Fourteenth Amendment Violations)**

16    134.  Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth

17          in full, Paragraphs 1 through 133.

18    135.  At all times relevant herein, there existed a clearly established due process right of

19          individuals, including David, to not to be subjected to false accusations by

20          government officials, including the deliberate presentation of false or perjured

21          evidence, and/or by the suppression of exculpatory information in court

22          proceedings or in documents submitted with recommendations or requests made to

23          the court. Any reasonable social services agent and/or government agent in Farris,

24          Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1

25          through 20's situation would know that it is a fundamental due process violation

26          to lie, exaggerate, fabricate evidence, and/or suppress material exculpatory

27          evidence in court reports and other documents filed with the Juvenile Court.

28    136.  In fact, Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez,

Butcher, and/or DOES 1 through 20, and each of them, had the affirmative and self-evident duty and obligation to be truthful, honest, accurate, and complete in petitions, reports, and documents submitted and/or presented to the Juvenile Court which had the power to adjudicate substantial rights, including parental rights. Defendants also had an affirmative obligation and duty to refrain from using improper, unlawful, and deceptive means to obtain judicial orders sustaining and/or adopting social worker recommendations or otherwise seeking to denigrate Plaintiffs' well-established liberty interests in familial integrity and continued familial association.

137. At all relevant times, Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, and each of them, were acting under color of law, and within the course and scope of their official duties when they drafted, created, approved, and/or filed documents with the juvenile court.

138. Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, and each of them, either singularly or jointly acted and/or agreed to deliberately and/or recklessly present false statements and information, and/or omitted known exculpatory material information when creating their various documents for presentation to the Juvenile Court, as alleged herein above. This conduct, i.e., Defendants' knowingly deceptive presentation of "evidence" to the Juvenile Court, caused Manuel, Andres, David, and S.V.'s removal, detention, and/or prolonged detention from Caroline's care, custody, and/or control.

139. Defendants Farris, Plemons, and/or DOES 1 through 20 engaged in deception in the presentation of evidence to the Juvenile Court in order to obtain a Removal Warrant for David. Defendants Farris, Plemons, and/or DOES 1 through 20 knew that this Warrant was ill-gotten, because the application (and supporting documents) included false statements and/or omitted exculpatory information. Had it not been for Defendants Farris, Plemons, and/or DOES 1 through 20's reckless

and/or deliberate false statements and/or omissions of exculpatory material in the Removal Warrant Application, the Juvenile Court would not have issued a Removal Warrant for David. Defendants Farris, Plemons, and/or DOES 1 through 20 executed and/or used the ill-gotten Warrant to remove David from Caroline's custody and care.

140. Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20 engaged in deception in the presentation of evidence to the Juvenile Court in order to initiate and continue Juvenile Dependency Proceeding, and ensure that David remained under the County's custody, control, and jurisdiction. Had it not been for Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's reckless and/or deliberate false statements and/or omissions of exculpatory material in the Juvenile Dependency Petitions, Detention Report, Jurisdiction/Disposition Report, Ex Parte Application, Status Review Report, and/or other reports filed in the Juvenile Court, the Juvenile Court would not have adopted Defendants' recommended findings, David's continued and/or prolonged detention would not have occurred, David would not have been subjected to the County's prolonged custody, control, and jurisdiction, and the County's interference into David's family, upbringing, and management would not have continued.

141. As a direct and proximate result of these Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's misconduct, David has suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical manifestations of emotional distress, and/or mental anxiety and anguish, among other things.

142. Due to the malicious, wrongful and despicable nature of the Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's misconduct, as herein alleged and described above, David is entitled to recover punitive damages against the individual Defendants, and each of them,

in accordance with law and subject to proof at trial.

**Count 2:**

**(First Amendment Violations)**

143.  Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 142.

144.  At all times relevant herein, there existed a clearly established first amendment right protecting cohabiting minor siblings from unwarranted government interference in their relationship. Any reasonable social services agent and/or government agent in Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's situation would know that Manuel, Andres, David, and S.V. enjoy this constitutional right.

145.  At all relevant times, Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, and each of them, were acting under color of law, and within the course and scope of their official duties when they drafted, created, approved, and/or filed documents with the juvenile court.

146.  Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, and each of them, either singularly or jointly acted and/or agreed to deliberately and/or recklessly present false statements and information, and/or omitted known exculpatory material information when creating their various documents for presentation to the Juvenile Court, as alleged herein above. This conduct, i.e., Defendants' knowingly deceptive presentation of "evidence" to the Juvenile Court, interfered with and/or severed David's association and/or relationship with S.V.

147.  Defendants Farris, Plemons, and/or DOES 1 through 20 engaged in deception in the presentation of evidence to the Juvenile Court in order to obtain a Removal Warrant for David. Defendants Farris, Plemons, and/or DOES 1 through 20 knew that this Warrant was ill-gotten, because the application (and supporting documents) included false statements and/or omitted exculpatory information. Had

it not been for Defendants Farris, Plemons, and/or DOES 1 through 20's reckless and/or deliberate false statements and/or omissions of exculpatory material in the Removal Warrant Application, the Juvenile Court would not have issued a Removal Warrant for Manuel, Andres, or David. Likewise, Manuel, Andres, and David would not have been deprived of their association and/or relationship with S.V.

148.    Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20 engaged in deception in the presentation of evidence to the Juvenile Court in order to initiate and continue Juvenile Dependency Proceeding, and ensure that Manuel, Andres, and David remained under the County's custody, control, and jurisdiction. Had it not been for Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's reckless and/or deliberate false statements and/or omissions of exculpatory material in the Juvenile Dependency Petitions, Detention Report, Jurisdiction/Disposition Report, Ex Parte Application, Status Review Report, and/or other reports filed in the Juvenile Court, the Juvenile Court would not have adopted Defendants' recommended findings, and Manuel, Andres, and David continued and/or prolonged detention would not have occurred. Manuel, Andres, and David would not have been subjected to the County's prolonged custody, control, and jurisdiction, and the County's interference into Manuel, Andres, and David's family, upbringing, and management would not have continued, and Manuel, Andres, and David would still have an association and/or relationship with S.V.

149.    As a direct and proximate result of these Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's misconduct, David has suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical manifestations of emotional distress, and/or mental anxiety and anguish, among other things.

150.  Due to the malicious, wrongful and despicable nature of the Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20's misconduct, as herein alleged and described above, David is entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

## SECOND CLAIM FOR RELIEF

### *MONELL RELATED CLAIMS FOR FAILURE TO PROTECT FROM HARM/STATE CREATED DANGER*

(By Plaintiff Against Defendant County of Riverside)

151.  Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, paragraphs 1 through 150.

152.  Defendant County of Riverside, including through its entity DPSS, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff to establish, implement and follow policies, procedures, customs and/or practices which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First, Fourth, and Fourteenth Amendments. This includes, without limitation, the protection of the right to substantive and procedural due process.

153.  Defendant County of Riverside also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within DPSS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

154.  Moreover, based on the duties charged to Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, including the responsibility to present evidence and recommendations to the juvenile court – a court with power to adjudicate substantial rights, including legal and custodial

rights of children and parents. The County and its policymaking officials knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of children with whom their agents regularly came into contact – and to adequately train its employee social workers on constitutionally appropriate policies and practices.

155. Defendant County of Riverside established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, when they violated Plaintiff's constitutional rights by engaging in deception in the presentation of evidence to the juvenile court, among other things.

156. At the time of the underlying events, the regularly established customs and practices of the County of Riverside and the DPSS were followed, adhered to, complied with, and carried out by Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiff's constitutional rights include, but not limited to:

a.  The policy, custom, and/or practice of including false, inaccurate, exaggerated, misleading, and/or untrue factual statements in the documents and/or reports filed with the juvenile court.

b.  The policy, custom, and/or practice of suppressing and/or omitting known exculpatory evidence in the documents and/or reports filed with the juvenile court.

c.  The policy, custom, and/or practice of permitting a social worker and/or supervisor to sign a document and/or court report without personal knowledge as to whether the statements made therein were complete and/or true, in an effort to bolster the credibility of the document, and/or report were true.

d.  The policy, custom, and/or practice of not correcting and/or informing the Court of prior false, inaccurate, exaggerated, misleading, and/or untrue factual statements in the documents and/or reports filed with the juvenile court.

157.  When Defendants Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, and each of them, engaged in deception in the presentation of evidence to the juvenile court, they were acting pursuant to and in accordance with the County's customs and/or practices. Indeed, the reports and/or other documents, filed with the juvenile court, were reviewed and approved by DPSS supervisors.

158.  County social workers engaging in deception in the presentation of evidence to the juvenile court was not an isolated incident specific to Plaintiff's circumstances or the circumstances of this particular case. Instead, the County and its social workers regularly include false statements, and/or suppress known exculpatory evidence, in reports or other documents filed in the juvenile court.

159.  County of Riverside has engaged in each of the customs and/or practices identified above on an ongoing and continuous basis since at least 2005, if not earlier, and continues to engage in these practices on an ongoing and daily basis.

160.  The County of Riverside regularly receives and/or is aware of complaints, leveled against its social workers, claiming that the social workers are engaging in deception in the presentation of evidence in the juvenile court.

161.  The County of Riverside never investigates or disciplines its social workers who engage in deception in the presentation of evidence to the juvenile court. The County of Riverside consistently fails to investigate or discipline social workers and their supervisors who are involved in constitutional violations so that violations of citizen's constitutional rights have not only become accepted, but are customary.

162.  The County did not investigate or discipline Defendants Farris, Weisenberger,

Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, for making false statements, and/or suppressing known exculpatory evidence, in reports or other documents they filed in the juvenile court.

163. The County refuses to admit that its social workers commit a constitutional violation when they make false statements, and/or suppress known exculpatory evidence, in reports or other documents filed in the juvenile court – and continues to do so. The County denies that Defendants Farris, Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, violated Plaintiff's rights when they made false statements, and/or suppressed exculpatory evidence, in reports or other documents filed in the juvenile court. The County ratified and/or approved the inclusion of false statements, and/or suppression of known exculpatory evidence, in reports or other documents filed in the juvenile court.

164. The Defendant County of Riverside is aware that its social workers make false statements and/or suppress known exculpatory evidence, in reports or other documents filed in the juvenile court. Yet, Defendant County of Riverside made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such misconduct, and has consistently and knowingly failed to provide any training to their social workers to inform them of the rights of parents and children to not be lied about in court reports and the requirement that all exculpatory evidence is presented to the juvenile court.

165. The Defendant County of Riverside's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above, *i.e.*, the known need for a specific policy prohibiting the aforementioned misconduct, is itself a "policy" decision which constitutes a policy of deliberate indifference.

166. This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff harm, in that Defendants Farris,

Weisenberger, Lopez, Cuevas, Plemons, Mendez, Butcher, and/or DOES 1 through 20, followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures of DPSS when they made false statements and/or suppress known exculpatory evidence, in reports or other documents filed in the juvenile court – none of which was constitutionally permissible.

167. Plaintiff is informed and believes, that Defendant County of Riverside failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child by the First, Fourth, and Fourteenth Amendments.

168. Without such policies, procedures, customs and/or practices in place, the County of Riverside Social Workers were allowed and permitted to engage in conduct that was in violation of Plaintiff's constitutional rights as more specifically set out in the General Allegations above.

169. Defendant County's failure to adopt such policies and training was the moving force behind the violations of Plaintiff's constitutional rights. Such failures include, but are not limited to:

a.  The County of Riverside did not have a written policy, procedure, custom, practice and/or recurrent training delineating the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments.

b.  The County of Riverside did not have a written policy, procedure, custom, practice and/or recurrent training instructing that a county social worker must disclose all known exculpatory evidence to the juvenile court.

c.  The County of Riverside did not have a written policy, procedure, custom, practice and/or recurrent training instructing that a county social worker is precluded from including false statements in documents or reports to the juvenile.

d.  The County of Riverside did not have a written policy, procedure, custom,

1  or practice requiring its social workers to be complete, honest, and accurate

2  in their reports to the court.

3  e.    The County of Riverside did not have a written policy, procedure, custom,

4  or practice requiring its social workers correct and/or inform the Court of

5  prior false, inaccurate, exaggerated, misleading, and/or untrue factual

6  statements in the documents and/or reports filed with the juvenile court.

7  f.    The County of Riverside did not have a written policy, procedure, custom,

8  or practice requiring its social workers and social worker supervisors to

9  have personal knowledge of the facts and/or statements made in a petition,

10  document, and/or report, when attesting to the veracity of those allegations,

11  facts, and/or statements.

12  g.    The County of Riverside did not have a written policy, procedure, custom,

13  or practice requiring its social workers and social worker supervisors to

14  conduct an independent investigation to determine whether the allegations,

15  facts, and/or statements in a petition, document, and/or report were true,

16  before attesting to the veracity of those allegations, facts, and/or statements.

17  h.    The County of Riverside did not have a policy or procedure that addressed

18  California Government Code, §820.21, *i.e.* civil immunity for a social

19  worker is lost if they commit perjury, fabricate evidence, or fail to provide

20  known exculpatory evidence.

21  170.    By deliberately refraining from promulgating any of the aforementioned policies,

22  procedures, customs, practices and/or training, the County permitted the

23  aforementioned basic policy decisions to be made by the lower level social

24  workers in the field. As a result, the Defendant County of Riverside's policy,

25  custom, and/or practice – as established, adopted, and implemented by SOCIAL

26  WORKER DEFENDANTS and DOES 1 through 20 – was to make false

27  statements and/or suppress known exculpatory evidence in reports and documents

28  filed with the juvenile court, and to continue to detain the child or otherwise cause

1    the continued detention of the child even thought it was known that there was no

2    factual basis to do so, or terminate all custody.

3    171.    These policies, customs, and/or practices – that disregard the Plaintiff's

4    constitutional protections – were a substantial factor in causing harm to the

5    Plaintiff. Thus, as a matter of law, because there was no formal policy preventing

6    the aforementioned misconduct, even though one was obviously needed, the social

7    workers on the line acted on behalf of the County in making final policy decisions

8    – which is exactly what they did when they made false statements and/or

9    suppressed known exculpatory evidence in reports and documents filed with the

10   juvenile court.

11   172.    The state of the law regarding the constitutional protections afforded to a child by

12   the First, Fourth, and Fourteenth Amendments was clearly established well before

13   2019. As such, the Defendant County of Riverside knew before 2019 that its

14   county social workers required recurrent training on the constitutional protections

15   afforded to a child.

16   173.    Despite this knowledge, the Defendant County of Riverside deliberately failed to

17   train or, alternatively, deliberately failed to provide recurrent and updated training

18   to its county social workers on the following constitutional protections:

19           a.    That a social worker must disclose all known inculpatory and

20                 exculpatory evidence to the juvenile court.

21           b.    That a social worker must be truthful, honest, and accurate when

22                 reporting and/or presenting evidence to the juvenile court.

23           c.    That a social worker is precluded from lying to and/or including false

24                 statements and/or suppressing important information from documents

25                 or reports to the juvenile court.

26           d.    That a social worker must disclose all known exculpatory evidence in

27                 documents and/or reports that will be relied upon by subsequent

28                 social workers.

COMPLAINT FOR DAMAGES

    e.    That a social worker is precluded from lying to and/or including false statements and/or suppressing important information from documents and/or reports that will be relied upon by subsequent social workers.

    f.    That quotation marks can only be used when the speaker's words are being reproduced verbatim.

174.    The County does not provide training on all policy updates, and does not expect its social workers to know every policy or procedure.

175.    Defendant County of Riverside's deliberate failure to train its county social workers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that DPSS agents were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the County's social workers, and/or agents, made false statements and/or suppressed known exculpatory evidence in reports and documents filed with the juvenile court, and then continued to detain him from his mother's care for a period of months even though they knew there was no legitimate basis to do so.

176.    The practice of turning a deliberate blind eye to the need for further or adequate training by ignoring repeated violations of the rights of children and parents with whom DPSS agents can regularly be expected to come into contact by failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendments to the United States Constitution.

177.    Defendant County of Riverside, including by and through its entity DPSS and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and proper constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and/or employees as to their

1    compliance with constitutional safeguards; and by deliberately permitting

2    SOCIAL WORKER DEFENDANTS and DOES 1 through 20, to engage in the

3    unlawful and unconstitutional conduct as herein alleged, with a total and

4    deliberate indifference to Plaintiff's rights.

5    178.    Defendant County of Riverside knew, or should have known, that by breaching the

6    above-mentioned duties and obligations that it was reasonably foreseeable that its

7    agency policies, practices, customs, and usages would, and did, directly cause

8    Plaintiff to be injured and damaged by Defendant County of Riverside's wrongful

9    practices, or deliberate lack of official policies to prevent the known practices

10    from occurring.

11    179.    These actions, and/or inactions, of the Defendant County of Riverside were the

12    moving force behind, and direct and proximate cause of Plaintiff's injuries. As a

13    result, Plaintiff has sustained general and special damages, to an extent and in an

14    amount to be proven at trial.

15    **Jury Trial Demand**

16    180.    Plaintiff demands a jury trial on each Claim for Relief set forth above.

17    **Prayer for Relief**

18    WHEREFORE, Plaintiff prays for judgment against Defendants, as to all causes of

19    action, as follows:

20    1.    General damages and special damages according to proof;

21    2.    As against the individual defendants, punitive damages as allowed by law;

22    3.    Attorneys fees and costs pursuant to 42 U.S.C. §1988, and any other

23    appropriate statute;

24    4.    Injunctive relief, both preliminary and permanent, as allowed by law,

25    (including preliminary injunctive relief to be based upon a separate

26    application);

27    5.    Costs of suit incurred herein; and

28    6.    Such further relief as the Court deems just and proper.

COMPLAINT FOR DAMAGES

1  Dated: December 2, 2024              THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

2                                          /s/ Stephen D. Daner
                                          Shawn A. McMillan, Esq.
3                                         Stephen D. Daner, Esq.
                                          Evan D. Pullman, Esq.
4                                         Attorneys for Plaintiffs Manuel Villasanti and Andres
                                          Villasanti
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28